UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONTINENTAL MEDICAL TRANSPORT LLC, d/b/a JET RESCUE,<br><br>       Plaintiff,<br><br> v.<br><br>HEALTH CARE SERVICE CORPORATION, d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS, and THE BOEING COMPANY CONSOLIDATED HEALTH AND WELFARE BENEFIT PLAN,<br><br>       Defendants. | No.:<br><br>COMPLAINT |

Plaintiff, Continental Medical Transport LLC d/b/a Jet Rescue ("Plaintiff" or "Jet Rescue"), for its complaint against defendants, Health Care Services Corporation, d/b/a Blue Cross Blue Shield of Illinois ("BCBSIL"), and the Boeing Company Consolidated Health and Welfare Benefit Plan (the "Plan") (collectively, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1. Jet Rescue brings this Complaint against BCBSIL and the Plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

COMPLAINT - 1

2. Jet Rescue provides long-range, international air ambulance transportation to sick and injured patients whose conditions make transportation by ground ambulance or other modes of transportation dangerous or impossible and whose doctors determine that the extent of their illnesses or injuries necessitate treatment at a more advanced hospital facility more than 150 miles from their current location. Jet Rescue provides state-of-the-art care to these patients during transportation, experienced pilots, and a staff of two medical personnel, including a chief medical provider who is an MD, PA-c, or RN with specialized training in flight physiology and experience in emergency room or critical care settings.

3. Upon information and belief, in July 2016, a patient covered by the Plan ("Patient 1") was vacationing in Peru when he became seriously ill and was taken to a hospital in Lima, Peru. The doctors treating Patient 1 in Peru determined that his condition was too severe for ordinary transportation, and further determined that emergency air ambulance services were medically necessary to return Patient 1 to the United States for treatment at a facility in the United States.

4. Patient 1 is a beneficiary of the Plan. The Plan provides medical, health, and disability insurance benefits for its beneficiaries and thus, is governed by ERISA as an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1).

5. BCBSIL, the third-party administrator ("TPA") of the Plan, initially informed Patient 1's family that it would approve coverage to fly Patient 1 to the nearest American major medical center.

6. Accordingly, Jet Rescue was contacted and transported Patient 1 via international air ambulance services from Lima, Peru, to Miami, Florida, on July 21-22, 2016, at which point he was transported a short distance by ground ambulance to a hospital located in Miami.

7. For the international air ambulance services that Jet Rescue rendered to Patient 1, Patient 1 incurred charges of $536,540.00, representing the usual, customary, and reasonable charges for these services.

COMPLAINT - 2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

8. The Plan expressly covers air ambulance services, including air transport from one hospital to another, where required by the physician and to the nearest hospital with appropriate regional specialized treatment facilities, equipment, or staff physicians. The air ambulance services that Jet Rescue provided to Patient 1 fell squarely within the scope of the Plan's coverage.

9. Yet, after approving the international air ambulance services that Jet Rescue provided to Patient 1, and well after the services were rendered, BCBSIL refused to cover the services, claiming, against all available medical evidence and in contravention of the Plan language, that the services Jet Rescue provided were not medically necessary.

10. As demonstrated more fully below, in its capacity as the Plan's TPA, BCBSIL exercises discretionary authority, control, and/or responsibility respecting management and/or administration of the Plan, and authority or control respecting management or disposition of the Plan's assets. Consequently, BCBSIL is an ERISA "fiduciary" of the Plan within the meaning of 29 U.S.C. § 1002(21).

11. As further demonstrated below, Jet Rescue, as Patient 1's assignee, has exhausted all available administrative remedies an effort to convince BCBSIL to cover the international air ambulance services it provided to Patient 1, to no avail.

12. Accordingly, Jet Rescue, as Patient 1's assignee, brings this action against Defendants under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover the benefits due to Jet Rescue under the Plan for the emergent, medically necessary international air ambulance services it provided to Patient 1.

13. Jet Rescue also brings claims against BCBSIL for other appropriate relief, including equitable and injunctive relief, pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), to remedy BCBSIL's other violations of ERISA, including violations of its fiduciary duties owed to Jet Rescue as Patient 1's assignee.

COMPLAINT - 3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## THE PARTIES

14. Plaintiff Jet Rescue is a limited liability company organized under the laws of the State of Florida, with its headquarters and principal place of business at 150 E. Palmetto Park Road, Suite 800, Boca Raton, Florida, 33434, and whose members are citizens of the United States.

15. Defendant BCBSIL is a health insurer. Upon information and belief, BCBSIL is a Mutual Legal Reserve Company organized under the laws of the State of Illinois, with its principal place of business located in Illinois. It operates a division that does business a "Blue Cross Blue Shield of Illinois," based out of Chicago, Illinois.

16. Defendant the Plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). The Plan provides, <u>inter alia</u>, medical and disability insurance benefits to eligible employees and former employees of the Boeing Company, and their eligible beneficiaries. Patient 1 was a beneficiary of the Plan.

## JURISDICTION AND VENUE

17. This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131 and 29 U.S.C. § 1332(a), as this is a civil enforcement action under ERISA.

18. This Court has personal jurisdiction over the Defendants because, at all times material hereto, Defendants carried on one or more businesses or business ventures in this judicial district; there is the requisite nexus between the business(es) and this action; and Defendants engaged in substantial and not isolated activity within this judicial district.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1332(e)(2), because: a substantial portion of the events giving rise to this action arose in this judicial district; substantial part of property that is the subject of this action is situated; and/or BCBSIL and the Plan may be found in this judicial district. Among other things, the Plan covered Patient 1 -- a resident of this judicial district -- by virtue of his employment with Boeing Company in this judicial district.

COMPLAINT - 4

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# FACTUAL BACKGROUND

## A. Jet Rescue, Its Mission, and Its Qualifications

20. Jet Rescue is a licensed provider of international air ambulance services based in Boca Raton, Palm Beach County, Florida.

21. Jet Rescue is a worldwide air ambulance service with an attendant fleet of aircrafts that provide bedside to bedside all-inclusive medical transport. The air ambulance flight coordination team manages all aspects of the patient's medical transport by coordinating with the patient's physician, departing and receiving facilities and insurance provider.

22. The Jet Rescue team includes professionally trained and highly experienced individuals with decades of experience in the air and ground ambulance, medical, communications, and training industries.

23. In order for Jet Rescue to provide patients with access to lifesaving care, the company must ensure readiness at all times, which includes retaining aircrafts, flight crews, clinical crews, certifications, maintenance, training, logistics, safety, and quality. These costs are mainly fixed; therefore, a portion must be allocated to each flight.

## B. Patient 1's Illness and Emergency Air Ambulance Transportation

24. On or around July 10, 2016, while traveling in Cusco, Peru, Patient 1 experienced respiratory distress. Jet Rescue transported him by air ambulance from Cusco to Lima, Peru, where he was taken to the Clinica Delgado. Clinica Delgado is a 150-bed second level general hospital in Lima and is one of the newest and most advanced hospitals facilities in South America. While at Clinica Delgado, Patient 1 was diagnosed with severe multifocal hypoxemic pneumonia, acute renal insufficiency, and Hepatitis C.

25. Patient 1's attending physician at Clinica Delgado was Dr. Marco A. Camere Torrealva. Dr. Camere determined that Patient 1 was suffering from multi-organ failure and cardiac arrhythmias, and that he required specialty care provided in an intensive care unit ("ICU"), an

COMPLAINT - 5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

internal medicine/intensive care physician, and a gastroenterologist. Patient 1 remained an inpatient in the ICU in Clinica Delgado for eight days.

26. However, Dr. Camere determined that, because of the limits in the treatment capabilities at Clinica Delgado and throughout the country of Peru, Patient 1 required air transport to a facility that was capable of providing the treatment Patient 1 needed, including, among other things, an extracorporeal membrane oxygenation ("ECMO") machine and the ability to perform a liver transplant.

27. Dr. Camere recommended that Patient 1 be transported to Jackson Memorial Hospital, a 1,500-bed facility in Miami, Florida. Dr. Camere concluded that Jackson Memorial was the closest and most appropriate facility that was capable of meeting the needs of Patient 1's critical condition, and that the services he needed could not be performed in Peru.

28. Upon Dr. Camere's request, Jet Rescue transported Patient 1 from Clinica Delgada in Lima to Miami commencing on July 21, 2016. Patient 1's next of kin executed forms, <u>inter</u> <u>alia</u>, assigning Patient 1's benefits under the Plan to Jet Rescue, authorizing Jet Rescue to bill the Plan, and granting Jet Rescue a limited power of attorney to pursue claims against the Plan.

29. Throughout both legs of the flight, Patient 1 remained intubated and ventilated, as he was having difficulty breathing on his own. Upon landing in Miami at approximately 4:49 a.m. on July 22, 2016, Patient 1 was transferred from the airplane to a ground ambulance, which transported him to Jackson Memorial Hospital.

30. Upon information and belief, BCBSIL covered Patient 1's entire stay at Jackson Memorial Hospital.

31. Patient 1 died in Jackson Memorial Hospital on July 27, 2016. As described on the Certification of Death, the causes of death were "Septic Shock and Pneumonia," with significant conditions contributing to his death listed as, "Acute Respiratory Failure, Acute Kidney Injury, Cirrhosis."

COMPLAINT - 6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**C.  The Plan Covered Patient 1's Air Ambulance Transportation**

32. Patient 1 was covered by the Plan, which was administered by BCBSIL. The document that BCBSIL has represented to be an excerpt from the Summary Plan Description ("SPD") for the Plan is annexed hereto as Exhibit A.[1]

33. The Plan expressly covered the air ambulance services that Jet Rescue furnished to Patient 1. As stated in the SPD:

> The plan covers professional ambulance services, including air ambulance, to transport you from the place where you are injured or become ill to the first hospital where you receive treatment.
>
> These services also are covered when a physician requires an ambulance to transport you to a hospital, including from one hospital to another, but only to the nearest hospital with appropriate regional specialized treatment facilities, equipment, or staff physicians. No other costs in connection with travel are covered.

**Exhibit A** at 2-12.

34. Here, the services that Jet Rescue provided to Patient 1 on July 21-22, 2016, qualify for coverage under the terms of the Plan. Specifically, Jet Rescue provided professional air ambulance services to Patient 1. Patient 1's treating physician, Dr. Camere, requested an air ambulance to transport Patient 1 from Clinica Delgado to Jackson Memorial Hospital. And Jackson Memorial Hospital was the nearest hospital with appropriate regional specialized treatment facilities, equipment, or staff physicians for Patient 1's condition.

---

[1] The document annexed hereto as Exhibit A was identified by BCBSIL as the Plan SPD in connection with motion papers it filed in a matter formerly pending in the Superior Court of the State of Washington, King County.

COMPLAINT - 7

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**D. Jet Rescue was Assigned Patient 1's Benefits under the Plan and Granted a Power of Attorney to Pursue Claims under the Plan on Patient 1's Behalf**

35. Because Patient 1's condition rendered him physically unable to sign medical authorization forms on his own, his ex-wife and close companion, who was traveling with him, executed the following documents on Patient 1's behalf to secure medically-necessary air ambulance transportation from Jet Rescue: (a) a Billing Authorization Form; (b) a Limited Power of Attorney; (c) an Appointment of Authorized Representative; and (d) an Assignment of Insurance Benefits.

36. She signed these documents as Patient 1's duly authorized legal representative. For example, on the Billing Authorization Form, she acknowledged that she was "one of the authorized signers listed below" and checked the box marked, "[r]elative or other person who arranges for the patient's treatment or exercise[s] other responsibility for the patient's affairs."

37. Moreover, the Limited Power of Attorney form that she signed on Patient 1's behalf authorized Jet Rescue to act as Patient 1's lawful attorney-in-fact for the following purposes:

> All matters related to my air and ground medical transportation, including, without limitation, full power to enter into agreements, contracts, assignments, authorizations for release of protected health information, and any other documentation or authority necessary to engage in the arrangement of ambulance transportation, payment for services, insurance claims, appeals (administrative and judicial), and litigation.

38. The Appointment of Authorized Representation Form that Patient 1's representative signed on Patient 1's behalf further designated Jet Recue "to serve as my authorized representative as is permitted under any insurance policy or benefit plan available to me," and to act on Patient 1's behalf as his authorized representative "with respect to every aspect of [his] claim for insurance benefits." This appointment conferred upon Jet Rescue, <u>inter alia</u>, the right to "[p]ursue any appeal process related to the claim for medical air and ground transportation, including all levels of administrative appeal, external appeals, and if necessary, any legal, equitable, or declaratory court

COMPLAINT - 8

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

action to recover [Patient 1's] insurance benefits or to pursue a claim for penalties against any plan administrator for failure to provide plan documents to me or to Jet Rescue."

39. The Assignment of Insurance Benefits form that she signed on Patient 1's behalf provided, <u>inter</u> <u>alia</u>, as follows:

> I agree that Jet Rescue and its affiliates, successors, and assigns including Continental Medical Transport, (collectively "Jet Rescue"[)] is permitted to bill all insurance or benefit plans ("Insurance Benefits") from which I may be entitled to benefits from any medical air and ground transportation services provided to me. I direct all to acknowledge and act consistent with this Assignment.
>
> I designate Jet Rescue as my beneficiary to any rights under my Insurance Benefits and irrevocably assign to Jet Rescue all rights i may have in connection with my Insurance Benefits.
>
> Any funds recovered by Jet Rescue from my Insurance Benefits are to be applied to the total billed charges for Jet Rescue's services. I agree to provide Jet Rescue with accurate information regarding the details of my insurance benefits, and to fully cooperate with Jet Rescue in seeking reimbursement of the Insurance Benefits, including, if necessary, bringing suit against any of my insurance benefit providers.
>
> Should this Assignment be prohibited in any way by the terms of an anti-assignment provision contained in my Insurance Benefits contracts, please advise and disclose to Jet Rescue in writing such anti-assignment provision within 10 days upon receipt of my Assignment; otherwise, this Assignment should be reasonably expected to be effective and any anti-assignment provision is waived. This Assignment shall not be proscribed or limited in any manner.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**E.     The Plan Did not Prohibit the Assignment of Benefits to Jet Rescue**

40. The Plan did not prohibit the assignment of Patient 1's rights, claims, and benefits under the Plan to Jet Rescue, that would deprive Jet Rescue of standing to bring this action. The SPD applicable to Patient 1 contains no anti-assignment provision. See Exhibit A.

41. Upon information and belief, the Boeing Company Master Welfare Plan ("Master Plan") governs the Plan. Although the Master Plan purports to restrict the ability of participants or dependents to assign rights under the plans governed by the Master Plan, it expressly exempts from this anti-assignment provision "any Employee (or the Dependent of any Employee) who is represented by a collective bargaining agent, except to the extent that the terms of the collective bargaining agreement covering such Employee allow for the application of this [anti-assignment provision]."

42. Upon information and belief, Patient 1 was covered by a collective bargaining agreement between the Boeing Company and the Society of Professional Engineering Employees in Aerospace, IFPTE Local 2001, which did not provide for the application of the Master Plan's anti-assignment provision to claims under the Plan.

43. Moreover, to the extent that the Plan contained a valid anti-assignment provision that restricted the assignment of rights, claims, or benefits under the Plan (and it did not), it was waived through an extensive course of dealing between Jet Rescue and BCBSIL, the TPA for the Plan, described more fully herein, including in Parts F and G, below.

44. Moreover, to the extent that the Plan contained a valid anti-assignment provision that restricted the assignment of rights, claims, or benefits under the Plan (and it did not), Jet Rescue may still bring this claim as the agent of Patient 1's estate pursuant to the Limited Power of Attorney and Appointment of Authorized Representative forms that were executed on Patient 1's behalf.

**F.     BCBSIL Initially Approved the International Air Transportation for Patient 1**

45. After Dr. Camere recommended that Patient 1 be transferred to the United States, Patient 1's companion and his other family members contacted BCBSIL, the Plan's TPA, seeking to

COMPLAINT - 10

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

arrange for an international air ambulance.   BCBSIL informed Patient 1's family members that it would cover Patient 1's transport to the nearest American major medical center.

46.   Then, on or around the date Jet Rescue transported Patient 1 to Miami, Patient 1's family was again contacted by BCBSIL and informed that Patient 1's transport to Miami via international air ambulance had been approved.

**G.   Jet Rescue Exhausted All Available Plan Remedies in an Effort to Convince BCBSIL to Cover Patient 1's Air Ambulance Services**

**1.   BCBSIL's Initial Denial**

47.   Jet Rescue submitted a claim for reimbursement for the emergency air ambulance services it provided to Patient 1 through the Blue Card Worldwide Program on August 2, 2016, for the full billed amount of $536,540.   BCBSIL split the claim into two separate claims in the following amounts:  (i) Claim No.63165547N240H01:  $497,540.00; and (ii) Claim No. 63155576E380H01:  $39,000.00.

48.   Despite previously approving Patient 1's international air ambulance services, BCBSIL denied both claims on or about December 16, 2016.  Patient 1's estate did not receive a copy of the Explanation of Benefits ("EOB") setting forth the reasons for the denial until on or around January 18, 2017, and Jet Rescue did not receive a copy until March 27, 2017.

49.   The EOB provided to Jet Rescue states that the claims were denied for the following reasons:  "Medical Policy review determined that the services provided is [sic] not covered based on corporate policy criteria."  This decision was contrary to the plain language of the Plan providing that the air ambulance services Jet Rescue provided were covered by the Plan and the medical records that Jet Rescue provided to BCBSIL in support its claim, demonstrating the medical necessity of the air ambulance services.

**2.   Provider Appeal and BCBSIL's First-Level Denial**

50.   Jet Rescue faxed a Provider Appeal to BCBSIL on March 30, 2017, which was accompanied by them.  A significant delay ensued in BCBSIL's processing of the appeal,

COMPLAINT - 11

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

purportedly because BCBSIL refused to communicate directly with Jet Rescue without a completed BCBSIL Standard Authorization Form to Use or Disclose Protected Health Information.

51. Accordingly, by letter dated May 23, 2018, Jet Rescue forwarded BCBSIL this form, as executed by the administrator Patient 1's estate.  BCBSIL acknowledged receipt of Jet Rescue's Provider Appeal in letters dated June 19 and 20, 2018.

52. By letter dated June 20, 2018, BCBSIL issued a first-level appeal decision upholding the denial.  BCBSIL's letter acknowledged that "this patient was critically ill."  Curiously, however, BCBSIL argued that "it is not made clear in the records the medical reason for the transfer, other than family preference to return to the United States."

53. Contrary to BCBSIL's statement, the medical records provided to BCBSIL made clear that the decision to transfer Patient 1 to Jackson Memorial was not based on "family preference" at all, but rather, on the clinical determination of Dr. Camere, Patient 1's treating physician in Peru, that Jackson Memorial was the closest and most appropriate facility that was capable of meeting the needs of Patient 1's critical condition, and that the services he needed could not be performed in Peru.

54. Importantly, as noted above, Dr. Camere concluded that Patient 1 needed extracorporeal membrane oxygenation ("ECMO") and a liver transplant, and these services were not available in Clinica Delgado or anywhere else in Peru.

55. BCBSIL's first-level denial acknowledged that "[t]he referring physician makes mention of some treatments their institution did not offer, such as extracorporeal membrane oxygenation (ECMO) or liver transplant."  However, BCBSIL stated that "there is not information that this patient would be a candidate for or would receive either of these treatments upon arrival."  This determination failed to address Dr. Camere's conclusion that Patient 1 was indeed a candidate for both treatments.

56. What is more, Dr. Camere's determination was supported by the fact that, as noted above, upon information and belief, BCBSIL fully covered Patient 1's stay at Jackson Memorial.

COMPLAINT - 12

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Moreover, Patient 1's death certificate revealed that, at the time of his death -- just six days after Jet Rescue transported him to Jackson Memorial -- Patient 1 was still suffering from the same serious health conditions that led Dr. Camere to conclude that he needed to be transferred to Jackson Memorial, including Acute Respiratory Failure, Acute Kidney Injury, and Cirrhosis.

57. BCBSIL's first-level denial wrongly asserted that, "[t]here was no information about attempts to arrange any needed services at any other hospital in Peru or in South America, including tertiary care hospitals with affiliated medical schools." To the contrary, as reflected in the medical records provided to BCBSIL, Dr. Camere determined that there was no other hospital in Peru that would be capable of providing these services. Notably, as explained in Jet Rescue's Provider Appeal dated March 30, 2017, visa issues would have prevented Patient 1 from being transported to another hospital anywhere in South America.

58. Thus, there was no basis for BCBSIL to disregard Dr. Camere's best medical judgment that Jackson Memorial was the closest and most appropriate facility that was capable of meeting the needs of Patient 1's critical condition.

### 3. BCBSIL's Second-Level Appeal Denial

59. BCBSIL's first-level denial advised Jet Rescue that it had 180 days in which to submit its second-level appeal. Jet Rescue timely submitted its second-level appeal to BCBSIL on or about December 7, 2018.

60. In its second-level appeal, inter alia, Jet Rescue explained how BCBSIL's refusal to cover the international air ambulance services at issue was contrary to the terms of the Plan and the extensive medical records that Jet Rescue had previously submitted with its appeal. Jet Rescue included these records again with its second-level appeal and requested that BCBSIL provide the following additional information: (i) a complete copy of the Plan and its SPD; (ii) the applicable BCBSIL medical policies upon which it purported to rely in denying Jet Rescue's claim, and (ii) all records relating to Patient 1's treatment at Jackson Memorial from July 21-27, 2016, and BCSIL's coverage of that treatment.

COMPLAINT - 13

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

61.     In a decision dated February 25, 2019, BCBSIL denied Jet Rescue's second-level appeal.  BCBSIL largely repeated the rationale of the first-level denial and added that "[t]his appears to be an elective transfer, not an emergency transfer."  BCBSIL added that "[t]here does not appear to be a time-dependent procedure planned for which the patient needed to be transferred as an emergency."

62.     Contrary to BCBSIL's findings in its second-level decision, the decision to transfer Patient 1 to Jackson Memorial was not "elective" at all, but rather, was based on Dr. Camere's clinical determination that Jackson Memorial was the closest and most appropriate facility that was capable of meeting the needs of Patient 1's critical condition, and that the services he needed could not be performed in Peru.

63.     Underscoring the fact that this decision was not "elective" was the fact that Patient 1 was originally taken from Cusco, Peru, to Clinica Delgado in Lima, Peru.  Only after Dr. Camere evaluated his condition and concluded that Clinica Delgado did not have the ability to meet the needs of Patient 1's critical condition was he transferred to Jackson Memorial.

64.     Thus, once again, there was no basis for BCBSIL to disregard Dr. Camere's best medical judgment that Jackson Memorial was the closest and most appropriate facility that was capable of meeting the needs of Patient 1's critical condition.

65.     Moreover, in its second-level denial, BCBSIL ignored Jet Rescue's information requests for the applicable Plan documents, the applicable BCBSIL medical policies, and BCBSIL's records relating to Patient 1's treatment at Jackson Memorial Hospital and BCBSIL's coverage of that treatment.

### 4.     BCBSIL's External Appeal Denial

66.     BCBSIL's second-level appeal informed Jet Rescue that it had a right to submit an external review of BCBSIL's medical determination within four months of the date of the second-level denial.  The second-level appeal further informed Jet Rescue that, once the external review was

COMPLAINT - 14

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

completed, Jet Rescue could seek the benefits that were the subject of the appeal by bringing an action under ERISA Section 502(a) within 180 days of the date of the external review.

67.     Jet Rescue timely filed its external appeal on June 19, 2019.  In its external appeal, inter alia, Jet Rescue once again explained how BCBSIL's refusal to cover the international air ambulance services at issue was contrary to the terms of the Plan and the extensive medical records that Jet Rescue had previously submitted with its appeal.  Again, Jet Rescue included these records with its external-level appeal.

68.     Moreover, Jet Rescue repeated its demands for the following information from BCBSIL:  (i) a complete copy of the Plan and its SPD; (ii) the applicable BCBSIL medical policies upon which it purported to rely in denying Jet Rescue's claim; and (iii) all records relating to Patient 1's treatment at Jackson Memorial from July 21-27, 2016, and BCSIL's coverage of that treatment.  Jet Rescue noted that these records are highly relevant to the propriety of BCBSIL's decision and should be considered as part of this appeal.

69.     However, by letter dated July 29, 2019, received by Jet Rescue on August 7, 2019, the external review organization upheld Jet Rescue's denial, again concluding that the plan did not cover the international air ambulance treatment that Jet Rescue provided to Patient 1.  The external review organization stated that the care he was receiving in Peru "appears to have been adequate and he was improving," despite Dr. Camere's conclusion that his hospital lacked the capabilities to continue treating him.

70.     The external review organization also speculated that "optimally remaining in his facility in Peru might have allowed for resolution of his sepsis and a less urgent transfer back to the United States for ongoing hepatology care."  This conclusions completely ignored Patient 1's critical state upon his departure from Clinica Delgado in Peru and throughout his international air ambulance transportation from Lima to Miami.  It also ignored that Patient 1's death certificate revealed that, at the time of his death -- just six days after Jet Rescue transported him to Jackson Memorial -- Patient 1 was still suffering from the same serious health conditions that led Dr. Camere

COMPLAINT - 15

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

to conclude that he needed to be transferred to Jackson Memorial, including Acute Respiratory Failure, Acute Kidney Injury, and Cirrhosis.

71. Perhaps most importantly, there is no evidence that the external review organization was provided or even requested BCBSIL's records of Patient 1's hospital stay at Jackson Memorial Hospital -- or BCBSIL's coverage for that stay -- despite its clear relevance to the propriety of BCBSIL's decision.

72. The external review was Jet Rescue's final avenue of administrative review under the terms of the Plan. Accordingly, Jet Rescue now timely commences this action within 180 days of the date of the external review decision.

## FIRST CAUSE OF ACTION

**(Claim for Benefits Due under ERISA Section 502(a)(1)(B))**

**(against the Plan and BCBSIL)**

73. Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

74. The Plan is an employee welfare benefits plan within the meaning of 29 U.S.C. § 1002(2)(A).

75. As described more fully above, Jet Rescue was assigned all rights, claims, and benefits under the Plan. Jet Rescue was also granted a limited power of attorney to pursue all such claims on Patient 1's behalf. By virtue of the assignment of benefits, or alternatively, the limited power of attorney, described more fully above, Jet Rescue acquired standing to institute this action to recover benefits due under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

76. As described more fully above, under the terms of the Plan, Patient 1 was entitled to coverage for the international air ambulance services that Jet Rescue rendered to Patient 1 on July 21-22, 2016.

77. In violation of the terms of the Plan, BCBSIL, as the TPA, failed to cover the international air ambulance services that Jet Rescue rendered to Patient 1 on July 21-22, 2016.

COMPLAINT - 16

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

78. As the result of the foregoing, Jet Rescue has suffered damages and lost benefits as assignee, for which it is entitled to restitution from BCBSIL and/or BCBSIL, other declaratory and injunctive relief related to the enforcement of the terms of the Plan, and to the clarification of future benefits. BCBSIL and/or the Plan are liable to Jet Rescue for unpaid benefits, restitution, interest, attorneys' fees, and other relief as this court deems just under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

**SECOND CAUSE OF ACTION**

**(Claim for other Appropriate Equitable Relief under ERISA Section 502(a)(3))**

**(against BCBSIL only)**

79. Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

80. As set forth more fully above, BCBSIL is the TPA for the Plan and, in that capacity, is an ERISA "fiduciary" of the Plan within the meaning of 29 U.S.C. § 1002(21).

81. As a fiduciary of the Plan, Jet Rescue owed the Plan beneficiaries -- including Jet Rescue as assignee of benefits -- a duty to act for the exclusive purpose of providing benefits to participants and their beneficiaries; with the care, skill, prudence, and diligence that a prudent administrator would use in the conduct of an enterprise of like character; and in accordance with the Plan documents. 29 U.S.C. § 1104(a)(1)(A), (B), (D).

82. As described more fully above, BCBSIL violated its fiduciary duties to the Plan beneficiaries -- including Jet Rescue as assignee of benefits -- by, among other things: advising Patient 1's family that international air ambulance services from Lima to Miami were approved services under the Plan, thereby inducing Patient 1's family to arrange for such transport; only to later renege on its commitment and exposing the family to hundreds of thousands of dollars in emergency air ambulance services, and exposing Patient 1's assignee, Jet Rescue, to the prospect of not recovering its fees and costs for the extensive international air ambulance services it provided; ignoring all available medical evidence, and the Plan language, in refusing to cover the services that

COMPLAINT - 17

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Jet Rescue provided; and refusing to provide or even consider other highly relevant evidence, including evidence of Patient 1's hospital stay at Jackson Memorial Hospital and BCBSIL's coverage for that stay.

83. By reason of the foregoing, Jet Rescue is entitled to appropriate equitable relief to redress those violations of BCBSIL's fiduciary duties under 29 U.S.C. § 1132(a)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Jet Rescue demands judgment in its favor against Defendants as follows:

A. Declaring that the services that Jet Rescue provided to Patient 1 were covered under the terms of the Plan;

B. Ordering BCBSIL and/or the Plan to pay Jet Rescue due it for the services it provided to Patient 1 under the terms of the Pan pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), in the amount of $536,540.00, plus interest;

C. Declaring that BCBSIL violated its fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1104, and awarding injunctive, declaratory and other equitable relief against BCBSIL to ensure compliance with ERISA;

D. Awarding reasonable attorneys' fees, as provided by § 502(g) of ERISA, 29 U.S.C. § 1132(g);

E. Awarding costs of suit;

F. Awarding pre-judgment and post-judgment interest; and

G. Awarding all other relief to which Jet Rescue is entitled.

\\
\\
\\
\\
\\

COMPLAINT - 18

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

DATED this 24th day of January, 2020.

K&L GATES LLP


By <u>s/ Peter A. Talevich</u>
Peter A Talevich, WSBA #42644
peter.talevich@klgates.com
K&L Gates LLP
925 Fourth Avenue Suite 2900
Seattle, WA 98104
Telephone: (206) 623-7580
Facsimile: (206) 623-7022

George P. Barbatsuly, NJ Bar#056421994
george.barbatsuly@klgates.com
*Pro Hac Vice Pending*

Stacey A. Hyman, NJ Bar#018402008
stacey.hyman@klgates.com
*Pro Hac Vice Pending*

K&L Gates LLP
One Newark Center 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4104

Attorneys for Plaintiff Continental Medical Transport LLC, d/b/a Jet Rescue

COMPLAINT - 19