THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONTINENTAL MEDICAL TRANSPORT LLC, d/b/a JET RESCUE,<br><br>Plaintiff,<br>v.<br><br>HEALTH CARE SERVICE CORPORATION, d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS, *et al.*,<br><br>Defendants. | CASE NO. C20-0115-JCC<br><br>ORDER |

This matter comes before the Court on the parties' respective motions for summary judgment (Dkt. Nos. 30, 35) and motions to seal (Dkt. Nos. 28, 33). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiff's motion for summary judgment (Dkt. No. 35), GRANTS Defendants' motion for summary judgment (Dkt. No. 30), and GRANTS the parties' motions to seal (Dkt. Nos. 28, 33) for the reasons explained herein.

I.     **BACKGROUND**

Plaintiff is a provider of "long-range international air ambulance" services. (Dkt. No. 1 at 2.) In July 2016, it transported D.O., a U.S. resident, from Lima, Peru to Miami, Florida for critical medical care to be rendered at Jackson Memorial Hospital. (*Id.*) D.O. initially fell ill

while travelling in Peru on July 10, 2016. (*Id.* at 5.) Shortly after, he arrived at Clinica Delgado, a 150-bed general hospital located in Lima, which Plaintiff describes as "one of the newest and most advanced hospital facilities in South America." (*Id.* at 5.) Nevertheless, D.O.'s physicians at Clinica Delgado and his representative in Peru decided to transfer D.O. to Jackson Memorial Hospital for additional care. (*Id.* at 5–6.) D.O. passed away on July 27, 2016, approximately five days after arriving in Miami. (*Id.* at 6.)

At the time of the transfer, D.O. was a participant in the Boeing Company's Consolidated Health and Welfare Benefit Plan ("Boeing Plan"), which Blue Cross Blue Shield of Illinois ("BCBS") administered. (*Id.*) The Boeing Plan is an ERISA-governed plan that expressly covers medically necessary air ambulance services. (*See* Dkt. No. 29 at 94.) Plaintiff presented charges to BCBS for the air ambulance services that it rendered to D.O. of $536,540, which Plaintiff asserted was the "usual, customary, and reasonable charge" for such services. (Dkt. No. 1 at 2.) BCBS denied the claim in December 2016. (*Id.* at 11.) Plaintiff, on behalf of D.O.'s estate,[1] internally appealed BCBS's denial through two successive appeals in 2018 and 2019. (*Id.* at 12–14.) In each instance, BCBS upheld the denial based upon its finding that the flights were the product of a "family preference" rather than medical necessity. (*Id.*) Plaintiff then sought external review by an Independent Review Organization ("IRO"), which agreed with BCBS's determination that the flight was not medically necessary. (*Id.* at 15.)

Following its unsuccessful appeals, Plaintiff brought suit against the Boeing Plan and BCBS in this Court. (*See generally id.*) Plaintiff seeks benefits allegedly due to it, on behalf of D.O.'s estate, under the terms of the Boeing Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), along with attorney fees and costs. (*Id.* at 16–17.) Plaintiff also sought equitable relief pursuant to 29 U.S.C. § 1132(a)(3), (*see id.* at 17–18), but has since affirmatively withdrawn this claim, (*see*

---

[1] Prior to the flight, D.O.'s ex-wife, who was travelling with him in Peru and served as his representative for the medical decisions made in Peru, allegedly authorized the flight and executed a limited power of attorney and an assignment of benefits that authorized Plaintiff to seek reimbursement of the air ambulance services on D.O.'s behalf. (*See* Dkt. No. 1 at 8.)

ORDER
C20-0115-JCC
PAGE - 2

Dkt. No. 36 at 2). Presently before the Court are Plaintiff's and Defendants' motions for summary judgment on Plaintiff's remaining ERISA-based claim, (*see* Dkt. Nos. 30, 35), as well as related unopposed motions to seal, (*see* Dkt. Nos. 28, 33).

## II. DISCUSSION

The Employment Retirement Income Security Act of 1974 ("ERISA") allows a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

### A. Standard of Review

In an ERISA case, a motion for summary judgment is "the conduit to bring [that] legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). The Court reviews a plan administrator's denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan does give the administrator that discretion, the Court reviews a denial of benefits for an abuse of discretion. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). Whether an administrator abused its discretion is a question of law, not fact. *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009).

It is undisputed that the Plan Administrator here had the authority to determine benefit eligibility and to construe the terms of the plan. (*Compare* Dkt. No. 30 at 11, *with* Dkt. No. 35 at 12.) This is also consistent with the Plan Supplement and the Master Welfare Plan ("MWP"). (*See* Dkt. No. 29 at 76 (Plan Supplement indicating that the "Plan Administrator has the exclusive right . . . to administer, apply, construe, and interpret the Plan"), Dkt. No. 29-12 at 51

(MWP indicating that the "Plan Administrator's powers include full discretionary authority to interpret the Plan").)

In this instance, it was not the Plan Administrator, but BCBS who made both the initial coverage decision and subsequent decisions denying Plaintiff's internal appeals. (Dkt. No. 1 at 11–14.) Therefore, at issue is whether the Plan Administrator effectively delegated its authority to BCBS. *See Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1283–84 (9th Cir. 1990). An effective delegation is one that is done in a manner consistent with the Plan. *See Shane v. Albertson's Inc.*, 504 F.3d 1166, 1171 (9th Cir. 2007) ("[T]he focus should [be] on whether the [] Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there was evidence establishing [the] delegation.").

According to the MWP, the Plan Administrator may delegate its duties "in whatever manner and extent it chooses . . . [but a]ny allocation or delegation . . . will be in writing, approved by a majority vote." (Dkt. No. 29-12 at 52.) This vote occurred at the December 18, 2009 Employee Benefit Plan Committee meeting. (*See* Dkt. No. 38-1 at 2 (meeting minutes memorializing the decision and indicating the change is to occur no earlier than January 1, 2011).[2]) BCBS's delegation is consistent with the January 1, 2011 Administrative Services Agreement between BCBS and the Boeing Company, which provided BCBS with the "discretionary authority to administer claims in accordance with [the Plan] and to make initial claim determinations concerning the availability of Plan benefits and final review and benefit determinations for appealed Claims." (Dkt. No. 29-11 at 53.) It is also consistent with the Summary Plan Description, notifying Plan participants that BCBS handles "the day-to-day administration of the plan" including "mak[ing] benefit decisions" and "process[ing] claim appeals." (Dkt. No. 29-9 at 24.)

---

[2] The Court may consider evidence outside of the administrative record to determine the appropriate standard of review. *See Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 977 (9th Cir. 1999).

Plaintiff argues that any such delegation, to the extent it was effective, did not extend to the IRO who provided the external review in this case. (Dkt. No. 35 at 15.) Therefore, according to Plaintiff, the Court must review the overall denial decision *de novo*. (*Id.*) The Court disagrees. As it has previously indicated, an affirmation of an internal benefit decision by an external IRO only serves to validate the internal decision. *Peter B. v. Premera Blue Cross*, 2017 WL 4843550, slip op. at 5 (W.D. Wash. 2017). The external review process does not convert this Court's review of a Plan Administrator or designee's discretionary decision to a *de novo* review. *See Yox v. Providence Health Plan*, 659 F. App'x 941, 944 (9th Cir. 2016) (reviewing a decision by a plan administrator that was upheld by an IRO for an abuse of discretion). To conclude otherwise would render *Firestone* deference meaningless, in light of the Affordable Care Act's requirement for external reviews. *See* Group Health Plans and Health Insurance Issuers: Rules Relating to Internal Claims and Appeals and External Review Processes, 76 Fed. Reg. 37,208, 37,210–11 (June 24, 2011) (to be codified at 45 C.F.R. pt. 147.)

The Court FINDS that in this instance the Plan Administrator effectively delegated its discretionary authority for making benefit determinations to BCBS. Accordingly, the Court will review BCBS's benefit determinations for an abuse of discretion.

### B. Review of BCBS's Denial Decisions

The dispositive issue here is whether it was reasonable for BCBS to conclude that it was not medically necessary to transport D.O. by air ambulance from Clinica Delgado to Jackson Memorial Hospital between July 21 and July 22, 2016. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) (applying a reasonableness calculus to an abuse of discretion review). A decision is unreasonable if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts of the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). In assessing the reasonableness of a decision, the Court "consider[s] all of the relevant circumstances in evaluating the decision by the plan administrator" or its designee. *P. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030,

ORDER
C20-0115-JCC
PAGE - 5

1041 (9th Cir. 2014). If the Court is "left with a definite and firm conviction that . . . a mistake has been committed," it must find that there was an abuse of discretion. *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

The Plan provided coverage for air ambulance services when all of the following requirements were met: Ground ambulance is not available; the patient's condition is unstable and requires rapid transport; and, in a medical emergency, transport from one hospital to another is necessary because "the first hospital does not have the required services or facilities to treat [the patient's] condition." (Dkt. No. 29 at 94.) In its two reviews of its initial denial decision, BCBS concluded that there was no evidence in the record suggesting that there were treatments that D.O. required, *and would be an appropriate candidate for*, that were unavailable at Clinica Delgado but would be available at Jackson Memorial Hospital. (Dkt. No. 29-7 at 45–49, 29-9 at 47–50.) Instead, BCBS concluded that the transfer was done primarily in response to the family's preference for D.O. to be cared for in the United States. (*Id.*)

In reaching its decision, BCBS relied on a number of facts contained in D.O.'s medical records. This included Jackson Memorial Hospital's intake form, which indicated, as the sole basis for D.O.'s transfer from Peru, his ex-wife's preference "to move his care to the U.S. because she could not speak Spanish and did not understand the plan of care" in Peru. (*See* Dkt. No. 29-1 at 149.) In fact, medical records from Clinica Delgado indicate that, at the time of transfer, D.O. was in the intensive care unit but was improving and that he was in a "delicate state" and his condition "could deteriorate" during transportation. (Dkt. No. 29-2 at 87.)

While D.O.'s treating physician at Clinica Delgado did, *after the fact*,[3] indicate that the facility would not be able to provide D.O. with a liver transplant or extra-corporeal membrane

---

[3] Defendants contend that this statement was prepared for purposes of Plaintiff's benefit denial appeal months after D.O. was transferred and that there is no reference to the need for such treatments in Clinica Delgado's contemporaneous medical records for D.O. (Dkt. No. 30 at 6; *see* Dkt. No. 29 at 72 (letter from Dr. Camare at Clinica Delgado referring to the transfer in the past tense).)

ORDER
C20-0115-JCC
PAGE - 6

oxygenation, and that this could be a basis for the transfer, the IRO opined that D.O. was not a candidate for either treatment, given his condition at the time of transport. (Dkt. No. 29-11 at 36–37.) Moreover, Plaintiff concedes that D.O. "was not considered for an ECMO or liver transplant procedure at Jackson Memorial." (Dkt. No. 36 at 10.)

It appears to this Court that D.O.'s plan of care once at Jackson Memorial Hospital was comparable to that in Peru. (*Id.* at 150.) Plaintiff's briefing on this issue is telling. It does not describe, with any specificity, how the treatment that D.O. actually received at Jackson Memorial materially differed from what he received at Clinica Delgado. (*See generally* Dkt. No. 35 at 23, 36 at 7–9, 40 at 6–7.) Instead, it discusses D.O.'s care at Jackson Memorial in general terms. (*See* Dkt. No. 36 at 9 (describing "intensive and specialized care," "critical care management," and "aggressive treatments").) Nevertheless, despite the care D.O. received upon his arrival, Jackson Memorial's records indicate that, after just a few days, the treating physicians concluded that "meaningful recovery is not expected" and his treatment shifted to "palliative services" with a "focus on comfort measures" in accordance with his "DNR" and his family's decision. (Dkt. No. 29-2 at 4–5, 9.)

BCBS's initial and subsequent determinations that D.O.'s air ambulance flight from Peru to the United States was not medically necessary and was, instead, primarily to satisfy the wishes of D.O.'s representative in Peru at the time, were neither illogical, implausible, or without support from the facts in the record.

Accordingly, summary judgment is GRANTED to Defendants on the claims contained in Plaintiff's complaint.

**C. Motions to Seal**

Parties may seek to file a document under seal pursuant to Local Civil Rule 5(g). While there is a strong presumption of public access to the Court's files, a document that a party seeks to attach to a dispositive motion may be filed under seal so long as the party shows "compelling reasons" to do so. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178–81 (9th

Cir. 2006). Here, Defendant moves to maintain the administrative record in this case under seal on the basis that it contains sensitive personal health information protected by the Health Insurance Portability and Accountability Act of 1996. (Dkt. No. 28.) Similarly, Plaintiff moves to maintain under seal additional medical records that it obtained through a third-party subpoena and filed with the Court as a supplement to the administrative record. (Dkt. No. 33.) There are sufficiently compelling reasons to maintain all of this information under seal that outweigh the public's interest in their disclosure. *See Karpenski v. Am. Gen. Life Cos.*, LLC, 2013 WL 5588312, slip. op. at 1 (W.D. Wash. 2013). Accordingly, the parties' motions to seal are GRANTED.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 30) is GRANTED, Plaintiff's motion for summary judgment (Dkt. No. 35) is DENIED, and the parties' motions to seal (Dkt. Nos. 28, 33) are GRANTED. The Clerk is DIRECTED to maintain Docket Numbers 29 and 34 under seal. The case is DISMISSED with prejudice.

DATED this 24th day of May 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE